## DANIEL L. CORBITT v. WILLIAM BRONG IMPLEADED WITH ANDREW PURNELL.

### *Chattel mortgage—Replevin.*

B. sold some horses and took back a mortgage which he assigned to L., who seized the horses under it and re-assigned to B., who afterwards joined in a note with him for an individual debt, and to secure it gave another mortgage on the same horses. Afterwards on paying L.'s note when it was past due, B. cut his own name off and assigned the note to P. in order to keep it alive against L., and P., without B.'s knowledge, assigned it to C., but paid B. the balance due from L. B. then demanded the horses from L. under the original mortgage, and the officer seizing them took them from C., who brought trover as for their conversion. *Held* that on receiving the amount due from L., B. had a right to suppose the transaction with him ended, and that he had a right to foreclose the original mortgage; and that C., on purchasing the mutilated and past due note without making inquiry of B., could not treat him as estopped to deny the second mortgage as an existing lien, and had no claim on the property.

Replevin is the only remedy for getting specific chattels.

Case made from the Superior Court of Grand Rapids. Submitted June 11. Decided June 23.

TROVER. Defendant had judgment. Affirmed.

*E. A. Maher* for plaintiff, urged that B. had signed the notes as surety for L., and was entitled to be subrogated to the mortgage lien: Herman Chat. Mortgages, § 150; and that having invested P. with an apparent mortgage lien upon the horses he was estopped from asserting as against the plaintiff who dealt with P. on the basis of his supposed ownership of the lien, that the mortgage was not a valid subsisting lien: *McNeil v. Tenth Nat. Bank* 46 N. Y. 325: 55 Barb. 59; *Crocker v. Crocker* 31 N. Y. 507; *Weaver v. Barden* 49 N. Y. 286; *Taft v. Chapman* 50 N. Y. 445; *Moore v. Met. Bank* 55 N. Y. 41; and that B. was estopped by the warranty in the last mortgage that the property was free from liens, from claiming that it was not paramount to the first mortgage: *Lawrence v. Stratton* 6 Cush. .163; *Givan v. Doe* 7 Blackf. 210; *Olmsted v. Elder* 2 Sandf. 325.

*John A. Fairfield* for defendant.

CAMPBELL, J. Corbitt sued to recover damages for the conversion of certain horses which he claims were unlawfully taken from him by defendants and sold by their procurement. The facts so far as material are these:

Brong held a mortgage for purchase money of these horses and some other property, executed to him in November, 1877, by the original purchaser from him, James Farley, due $200 in six and $200 in nine months, with power to take possession in case of any attempt to sell or remove them from Grand Rapids. Farley sold them in a few days to James H. Brown. Shortly thereafter Brong assigned the mortgage to one Lord, who took possession of the horses and continued in possession until just before this controversy arose, in June, 1879.

In March, 1878, Brong accepted a re-assignment of the mortgage from Lord, who had put the horses in charge of one Kennedy, and who paid Kennedy for their keeping. Lord then took charge of the horses with Brong's knowledge and approval.

On the 18th of March, 1878, Brong and Lord signed a note on Lord's private account to one Fitch for $60, and both joined in a chattel mortgage of the horses to him. This was reduced by Lord to $40. In June, 1879, Brong paid this note and procured an assignment to Purnell in order to keep up the claim against Lord. Purnell, without Brong's knowledge, assigned it to Corbitt for $42, which was afterwards paid to Brong by Purnell, but it is not found that Brong knew where the money came from. Brong's name was cut off from the note, which was overdue.

In June, 1879, three days after Brong's settlement with Fitch, Brong sent a constable to demand the property from Lord under the Farley mortgage, who told the officer he must demand of Corbitt. A replevin was then sued out in Purnell's name, and the property taken and sold under the Farley mortgage. No further proceedings were had in the replevin case. Corbin bought up a claim of Lord for keeping the horses. Lord never presented it to Brong, and Brong did not know he claimed anything.

Corbitt now claims that he is entitled to redress because he owned the Fitch mortgage, and also because of the claim for keeping the horses.

It may be true that Mr. Fitch could have held his mortgage paramount to any claim of Brong under the Farley mortgage. But when Brong, who was the only party interested in the horses, paid Fitch and cut off his own name from the note, there was nothing left except the right against Lord. And Corbitt by purchasing this mutilated and past-due note and making no inquiry of Brong, cannot treat him as estopped to deny this mortgage as an existing lien. Brong when Purnell paid him the balance due from Lord, had a right to suppose the whole transaction was ended, and that he might enforce his Farley mortgage.

This being so, Corbitt had no claim on the horses, and cannot complain that they were taken away from him. We see no reason to hold there was anything fraudulent in replevying them. That is the only remedy to get property specifically; and there is no finding of bad faith. Even if there

had been, it is not easy to see why the defendant in replevin had not as good a remedy in that proceeding as in any other. And he certainly would have no claim for the value of property which did not belong to him.

There is nothing in the case to show that there was any reason why Brong should owe Lord for care of the horses. There was no such understanding, and under all the circumstances it was not unnatural in the absence of any claim to that effect, to suppose that Lord found their use sufficient to satisfy him for his trouble. The court below was satisfied that no such claim existed, and the finding of facts does not preclude the correctness of such a conclusion.

We think the court did not err in holding that Mr. Corbitt made out no case.

The judgment must be affirmed with costs.

The other Justices concurred.